THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN QUIRÓS DÍAZ, Defendant and Appellant.

No. 5491.   Argued March 19, 1935.—Decided July 26, 1935.

*R. Rivera Zayas* for appellant.   *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Wolf delivered the opinion of the court.

While perhaps initially and before the defense was heard, the position assumed by him was not made clear, ultimately the defendant "charged with murder" relied on a plea of self-defense. Ramón Córdova, Jr., who was shot and killed by the defendant, lived for a number of hours thereafter and walked a short distance from the place of the shooting. The matters of self-defense relied upon were, as testified to by two witnesses, that Córdova carried a weapon and that previously in two written notes he had challenged the defendant to come out of his shop. Testimony was given by the People tending to show that the defendant was entirely the aggressor. From the evidence as admitted the jury had a right to infer the guilt of the defendant.

At the hearing and from our own inspection of the record, the principal matter to be considered is a dying declaration. This dying declaration was taken before the District Attorney of Bayamón and reads as follows:

"In Bayamón, Puerto Rico, on the seventh of December 1932; I, Ramón Córdova, Jr., resident of Bayamón, ____years old, do appear before the district attorney and after having been duly advised of my rights, of my own free will and under oath, do testify and answer to the questions of the district attorney as follows:

"Q. Córdova, how do you feel mentally?

"A. Perfectly well.

"Q. If you feel physically able, tell me what has happened.

"A. At present I have three wounds, two in the abdomen and one in my arm, I feel critically ill; I realize that, and I feel that I shall die, but I can tell you what happened.

"Q. Tell me everything.

"A. About an hour ago I was walking along Recreo Street with Fernanda Adorno when Juan Quirós came up to me from behind a bus near Emilio Vega's bakery and said to me: 'You bastard, you,' (other epithets), and immediately fired four shots at me wounding me with three, two in the stomach and the other in the left arm. Oh! Oh! what a pain, wait a minute, sir. . . . (Pause)

"Q. Take your time and don't worry. (The declarant makes a grimace of pain which is reflected on his face.) Córdova, continue, what happened between you tonight or before tonight?

"A. Nothing happened to make that man kill me. He wrote me a note a few days ago asking me for two game-cocks and since they did not belong to him I did not send them. Oh! doctor, operate, I'm dying! (He pauses closing his eyes and proceeds) : I had not spoken to him for about a year or less and I could not imagine the attack that he made on me tonight.

"That that is all he has to testify and that he ratifies and signs.

"(Sgd.) Ramón Córdova Jr.

"Sworn to and subscribed before me by Ramón Córdova, Jr., to me personally known, this 7th day of December, 1932.

"(Sgd.) E. Ponsa Parés,
"District Attorney."

The appellant has cited to us the case of *Shepard* v. *United States,* 290 U.S. 96. The first headnote of that case is as follows:

"To make out a dying declaration the declarant must have spoken without hope of recovery and in the shadow of impending death, and this state of mind must be exhibited in the evidence and not left to conjecture."

Unquestionably the court and the jury had a right to infer from the first part of the victim's declaration that he had this fear of impending death. The subsequent outcry that he made is perfectly consistent with a dying man's desperate desire for relief. In other words, that Córdova was reaching out for a momentary extension of life.

Authorities to support this position are as follows: *People* v. *Díaz,* 35 P.R.R. 580; *People* v. *Mejías,* 47 P.R.R. 266.

This disposes of the third assignment of error.

█ █ The first assignment of error relates to the testimony given by Dr. Rodríguez as to the size of the bullet. We have some idea that this is not really expert evidence but a statement of fact on the knowledge of the declarant, but in any event the size of the bullet was unimportant as the appellant relied on a plea of **self-defense.**

The second assignment of error was with respect to a statement made by a witness that Córdova, shortly after he was shot at a short distance from the place of the shooting, said that Quirós had murdered him. We think this manifestation was so close to the main happening both in time and distance as to constitute a part of the *res gestae*. *People* v. *Calventy*, 34 P.R.R. 375; *People* v. *Crespo*, 21 P.R.R. 285; 3 Wigmore on Evidence, section 1747, *et seq.*

■ The defendant appeared before the district attorney and made a statement in his own favor to the effect that he, Quirós, had had nothing to do with the shooting. This statement, inconsistent with the plea of self-defense, was admissible as tending to show, either a guilty state of mind, or at least one different from that possessed by a man relying morally on having defended himself. The defendant could have protected himself by a request for an instruction attempting to limit the effect of this declaration.

■ The instructions on the whole covered the case and it is unnecessary for us to consider the definitions of murder because the main question of self-defense *vel non* was submitted to the jury.

The instructions on self-defense appear to us to be sufficient. In any event, the defendant at the trial gave the court no opportunity to correct them. *People* v. *Benítez*, 47 P.R.R. 74; *People* v. *Mercado*, 46 P.R.R. 147; *People* v. *Estrella*, 45 P.R.R. 448; *People* v. *Maldonado*, 45 P.R.R. 405.

Similar considerations apply to the other objections to the instructions of the court.

■ The eleventh error was that the court erred in not giving certain instructions requested by the defendant. These prayers were either not a correct statement of the law, were covered by the general instructions of the court, or the court's failure to give them was harmless.

The case was properly submitted to the jury on the conflict of the evidence, and the appellant does not convince us that the jury ought to have had a reasonable doubt.

The motion for a new trial covered only the matters previously here assigned as error and is embraced by our preceding discussion.

The judgment appealed from should be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.